UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| Pete Wright, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:18-cv-01981-RWS |
| Missouri Department of Mental Health, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on Plaintiff Pete Wright's motion for a preliminary injunction in his American's with Disabilities Act (ADA) case. [ECF No. 15] For the reasons explained below, I deny the motion.

## BACKGROUND

Wright is a civil detainee at the Missouri Department of Mental Health's (MDMH) Sex Offender Rehabilitation and Treatment Services (SORTS) Center in Farmington, MO. Prior to his detainment at SORTS, Wright was incarcerated by the Missouri Department of Corrections (MDOC). During his incarceration, Wright was granted several accommodations for his chronic myelogenous leukemia (CML), which was diagnosed in 2003, and his pernicious anemia, which was diagnose in 1996. In particular, between 2003 and 2018, Wright was occasionally isolated in a single room because of the risk of infection caused by his

1

CML. [Ex. 10, ECF No. 15] The MDOC also provided Wright extra blankets and limited his exposure to cold to accommodate the cold sensitivity caused by his pernicious anemia and cancer treatment. Additionally, in February 2007, Wright was provided a lower bunk as an accommodation for his chronic back pain. [Ex. 11, ECF No. 15] According to the MDOC records provided, Wright was not isolated in a single room throughout the period in question as indicated by his request for a bottom bunk in in 2007 and 2014. [Ex. 9, ECF No. 15]

Since moving to the SORTS facility in August 2018, Wright has made a number of ADA accommodation requests. On October 11, 2018, Wright requested a face-to-face meeting with the facility's ADA coordinator to discuss the possibility of the facility providing Wright a jacket and gloves to accommodate the cold sensitivity caused by his anemia and cancer treatment. [Ex. 14, ECF No. 15] The request was forwarded to a second official at SORTS instructing them to submit a property request. It is unclear whether the property request was submitted or whether Wright was provided a jacket.[1] Then on October 25, 2019, the plaintiff verbally requested a meeting with the ADA coordinator, stating his belief that "no one knows who the ADA coordinator is." [Ex. 15, ECF No.15] The official he was speaking with offered to have a referral made to his doctor, to which the plaintiff

---

[1] Exhibit 22 of the Plaintiff's motion for a preliminary injunction indicates that the clothing request process from the memo dates April 17, 2019, was suspended as of August 12, 2019. But since this refers to a process created several months after Wright's October request, it is not clear how it impacted Wright's October 2018 request.

responded, "they probably won't let me off the ward." Despite these requests, the plaintiff was not given a meeting with the ADA coordinator, so he filed another request for accommodations on November 7, 2018. [Ex. 16, ECF No. 15] The staff responded to this request by informing Wright that he needs a current medical evaluation and suggesting he put in a team request for a medical appointment for determination of reasonable accommodations. [Ex. 16, ECF No. 15] There is no indication that a medical evaluation was ever requested. One November 12, 2018, Wright filed another request for accommodation, this time requesting a single occupancy rooms where he could control the temperature. [Ex. 17, ECF No. 15] He also complained that there was no hot water available. [Ex. 17ECF No. 15] The staff's written response indicated that maintenance checked the hot water and that it was now within the normal range. [Ex. 17, ECF No. 15] They also indicated that the facility did not have the ability to provide a single occupancy room. [Ex. 17, ECF No. 15] The plaintiff contends that this response is not true because the facility has offered a single occupancy rooms to transgender residents in the past. [ECF No. 15, ¶ 33] He also states that the defendants were mistaken about the status of the hot water and that as of April 2019 there was still no hot water in his building, despite the defendant's contention that the water temperature is checked regularly. [Ex. 18, ECF No. 15] Wright filed four more ADA complaints with SORTS, one for retaliation for filing this lawsuit, one reiterating his disapproval of

the facility's handling of his past requests, and two concerning the lack of hot water. [Ex. 18-21, ECF No. 15] SORTS responded to these complaints by referring the water issue to maintenance and stating that the room temperatures met the standards set by the state. [Ex. 18-21, ECF No. 15]

Wright filed this lawsuit on November 20, 2018, alleging that SORTS violated Title II of the ADA by failing to engage in the interactive process and failing to provide reasonable accommodations. He filed the motion for preliminary injunction on August 26, 2019.

## **ANALYSIS**

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).

Whether a preliminary injunction should be granted "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the

public interest." Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981). The party seeking injunctive relief bears the burden of proving these factors. Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir.2006). Additionally, while no single factor is determinative, D.M. by Bao Xiong v. Minnesota State High Sch. League, 917 F.3d 994, 999 (8th Cir. 2019), the likelihood of success is the most significant. Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013). And "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett, 705 F.3d at 320 (quoting CDI Energy Servs., Inc. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009)).

## IRREPARABLE HARM

"The threshold inquiry is whether the movant has shown the threat of irreparable injury." Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." Id. Irreparable harm must be certain and imminent such that there is a clear and present need for equitable relief. Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir. 1995).

Although it is a close call, I find that Wright has failed to establish an irreparable harm. Wright's medical record establishes that he has CML and pernicious anemia and suffers from a severe sensitivity to cold, but it does not establish that failure to provide him a single room poses an imminent danger to his health. First, the defendant has already provided Wright with extra blankets to help alleviate his pain. This is the same remedy recommended by Wright's physician while he was in the custody of the Missouri Department of Corrections (MDOC). [Ex. 12, ECF No. 15] Although Wright indicates multiple times that he was frequently segregated in his own room or placed in reverse isolation while with the MDOC, his medical records indicate that these accommodations were because of his low blood cell count and neutropenia, not his sensitivity to cold. Additionally, there is no indication in the medical records provided that exposure to cold increases his risk of infection or neutropenia. [Ex. 1-13, ECF No. 15] Wright does state in his verified motion for a preliminary injunction that "complications from infection or developing neutropenia can cause the death of the plaintiff," [ECF No. 15, ¶ 36], but he does not establish that these complications are the result of being cold.[2] See Barnett v. Hill, 2019 WL 2579460 at *3 (E.D.MO. June 24, 2019).

---

[2] Wright indicates lack of hot water increases his risk of infection, but, as I discuss in more detail in the next section, it appears from Wrights Response to the MDMH's memorandum opposing the preliminary injunction that this issue was being addressed. [ECF No. 21, ¶ 2]

## PROBABILITY OF SUCCESS

Next, I will consider the plaintiff's probability of success. Although none of the factors are determinative, "the probability of success factor is the most significant." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (internal citations omitted). At this stage, I am not deciding whether Wright will ultimately win on the merits, but rather weighing the cases particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981). Accordingly, Wright need not show he would prevail on the merits with mathematical precision, but he must show he has a fair chance of success.

In order "to establish a violation of Title II [of the ADA], a plaintiff must establish that: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability." Ginnery v. Blake, No. 4:06-cv-579 CAS, 2007 WL 4178624, at *2-3 (E.D. Mo. 2007) (quoting Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998). One method of establishing discrimination is by demonstrating that the public entity failed to provide a reasonable accommodation. Swenson v. Lincoln, 260 F.Supp.2d

1136, 1144 (D.Wy. 2003), 28 CFR §130(b)(7). The plaintiff has the initial burden of establishing that the accommodation 2 (they seek is reasonable on its face. U.S. Airways v. Barnett, 535 U.S. 391, 401-02 (2002). For a plaintiff to show that an accommodation is reasonable, they must show it is feasible and reasonable in the run of cases. Id., Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004). Once the plaintiff has made this showing, the defendant can come forward to show unreasonableness or undue hardship. Id.

Assuming without deciding that the plaintiff is a qualified individual with a disability under the ADA, his failure to accommodate claim under Title II is not likely to succeed. Although Wright requested an accommodation that SORTS failed to provide, a single occupancy room where he can control the temperature, he will likely be unable to show that this accommodation is reasonable.

In order to demonstrate the facial reasonableness of the requested accommodation, Wright must show it is plausible or reasonable in the run of cases. Barnett, 535 U.S. at 401-02, Peebles, 354 F.3d at 768. It is a close call whether Wright will even be able to show that a single occupancy room is reasonable on its face, since it is unlikely reassignment to a single room would be reasonable in the run of cases. Regardless, the MDMH will likely be able to establish that they are unable to provide single occupancy rooms at the SORTS facility. In response to Wright's, November 12, 2018 request, the treatment team included a note that said,

"[r]egarding a single person room, this facility does not have the ability." [Ex. 17, ECF No. 15] The staff maintained this position in response to Wright's accommodation request dated August 7, 2019. [Ex. 27, ECF No. 21] And the MDMH again reiterated this position in their memorandum in opposition to the plaintiff's motion for a preliminary injunction. [ECF No. 19, 8] Although Wright states in his verified motion for preliminary injunction and in one of his accommodation requests that the facility has provided single occupancy rooms to several patients in the past, he offers no additional evidence to support this assertion. Additionally, Wright does not address whether patients who have allegedly been placed in single occupancy rooms have control over the temperature in their rooms. In addition to the feasibility issue, the defendant indicates that providing a single occupancy room may cause undue hardship on the facility and its residents. In particular the defendant cites the need to make permanent room reassignments if Wright's preliminary injunction is granted. As for Wright's request for hot water to be provided, it appears based on Wright's motion and response that it has been addressed and is thus moot. Particularly, in his response to the defendants memorandum, Wright indicated that as of August 2019 parts had been ordered to correct the issue. [ECF No. 21, 2]

Wright also argues that the defendant failed to engage in the interactive process. "To determine whether an accommodation for the employee is necessary,

9

and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.' " Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 902 (8th Cir.2009). "To show that an [entity] did not engage in an interactive process, the employee must prove: 1) the [entity] knew about the employee's disability; 2) the [plaintiff] requested accommodations or assistance for his or her disability; 3) the [entity] did not make a good faith effort to assist the [plaintiff] in seeking accommodations; and 4) the [plaintiff] could have been reasonably accommodated but for the [entity's] lack of good faith." Schaffhauser v. United Parcel Service, 794 F.3d 899, 906 (8th Cir. 2015). Wright has established that SORTS knew of his disability and that he requested an accommodation. But it is unlikely that Wright will be able to establish that SORTS did not make a good faith effort to assist him and that he could have been reasonably accommodated but for its failure to engage in the process.

Although entities are required to participate in the interactive process, "a disabled individual is not entitled to an accommodation of his choice." Minnihan v. Mediacom Communications Corp., 779 F.3d 803, 813 (8th Cir. 2015) (quoting Rehrs v. Iams Co., 486 F.3d 353, 359 (8th Cir. 2007)), see also Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 954 (8th Cir. 1999). The individual seeking accommodations still carries the burden of showing that a particular accommodation rejected by the entity would have been reasonable. Fjellestad v.

Pizza Hut of America, Inc., 188 F.3d 944, 954 (8th Cir. 1999) (citing Taylor v. Phoenixville School District, 174 F.3d 142, 162 (3rd Cir. 1999)). Additionally, participation in the interactive process is an obligation of both parties, so an entity cannot be faulted if after conferring with the requesting individual, the individual does not provide the information the entity needs to find possible accommodations. Taylor v. Phoenixville School District, 174 F.3d 142, 162 (3rd Cir. 1999).

Since Wright will likely be unable to show that the rejected accommodation was reasonable, his claim based on SORTS failure to participate in the interactive process will probably not succeed. Additionally, the information provided by the plaintiff indicates that SORTS has had some engagement in the interactive process, despite their failure to provide an in-person meeting. First the plaintiff states in his complaint that SORTS provided additional blankets as a reasonable accommodation. ECF No. [1] at ¶ 17. Secondly, Wright provided two requests for accommodation in which SORTS states in its written response that "[he] would need a current medical staff to advise on certain accommodations" and recommending that he should speak with the medical staff by putting in a team request for an appointment. [Ex. 16, ECF No. 15] and [Ex. 27, ECF No. 21]

Since Wright will likely be unable to demonstrate that the requested accommodation was feasible, I find that the probability of success factor strongly weighs in favor of denying the preliminary injunction.

11

## BALANCE OF HARMS

"Under the third Dataphase factor, the Court considers whether any irreparable harm to the movant outweighs any potential harm to the non-movant," in this case, SORTS. Laclede Gas Co. v. St. Charles Cty., Mo, 2012 WL 265009, at *4 (E.D.Mo. July 2, 2012), aff'd, 713 F.3d 413 (8th Cir. 2013).

Generally, "[a] request for injunctive relief in the prison context 'must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Barnett v. Hill, No. 1:18-CV-238 AGF, 2019 WL 2579460, at *2 (E.D. Mo. June 24, 2019) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)). Although SORTS is not a prison, similar administrative problems exist in this case. MDMH notes the potential administrative harm associated with the need to perform permanent room reassignments to accommodate Wright's request. This has the potential to cause disruptions to SORTS, Wright's roommates, and other residents. Accordingly, I find that this factor weighs slightly in favor of denying the preliminary injunction.

## PUBLIC INTEREST

Finally, the public interest factor does not weigh strongly in favor of either party. Ensuring the ADA is properly implemented at state facilities is an important

public interest, but so is ensuring the effective management and administration of the facilities and their residents.

## CONCLUSION

Based on my analysis of the Dataphase factors, a preliminary injunction is not appropriate in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiff's motion for a preliminary injunction [15] is **DENIED**.

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January 2020.