UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PETE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1981-RWS |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| MENTAL HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on Defendant Missouri Department of Mental Health's (the "MDMH") motion for summary judgment in Plaintiff Pete Wright's Americans with Disabilities Act ("ADA") case. ECF No. [62]. For the reasons set forth below, I will grant the MDMH's motion.

## BACKGROUND[1]

Wright is a civil detainee confined at the MDMH's Sex Offender Rehabilitation Treatment Services ("SORTS") facility in Farmington, Missouri, pursuant to Missouri's Sexual Violent Predator laws. [ECF No. 65, Def.'s Statement of Uncontroverted Material Facts ("SUMF"), ¶ 1; ECF No. 82, Pl.'s SUMF, ¶ 1].

---

[1] The facts in this section are taken from the parties' statements of uncontroverted material facts, ECF Nos. [65] and [82], to the extent they are not specifically controverted by the opposing party as outlined in Local Rule 7-4.01(E).

Before his civil detainment, Wright was incarcerated within the Missouri Department of Corrections ("MDOC") for thirty years.  [ECF No. 65, Def.'s SUMF, ¶ 1].

During his incarceration, Wright was diagnosed with chronic myelogenous leukemia ("CML") and pernicious anemia.  [ECF No. 82, Pl.'s SUMF, ¶¶ 4–5].  Wright takes oral chemotherapy medication for his CML and receives vitamin B injections for his pernicious anemia.  [ECF No. 65, Def.'s SUMF, ¶¶ 24–25; ECF No. 82, Pl.'s SUMF, ¶ 6].  As alleged in Wright's complaint, one of the side-effects of his chemotherapy medication is that it causes sensitivity to cold conditions and environments.  [ECF No. 65, Def.'s SUMF, ¶ 3].  Wright also alleges that the combined effects of his CML, pernicious anemia, and chemotherapy medication limit his ability to keep warm.  [Id.]

Due to his conditions, Wright was granted several accommodations while incarcerated within the MDOC.  For example, to accommodate Wright's cold sensitivity, the MDOC provided Wright additional blankets and orders for limited exposure to cold conditions.  [Id. at ¶¶ 31–32].  Wright also received orders for "no work" and "no recreation" to accommodate his chronic back pain.  [ECF No. 82, Pl.'s SUMF, ¶ 11].  Because Wright was at an increased risk of infection at times due to his CML and chemotherapy medication, he was also occasionally isolated in a single-occupancy cell.  [Id. at ¶ 9].

In 2018, Wright was civilly detained and subsequently committed to SORTS. [ECF No. 65, Def.'s SUMF, ¶ 19].  SORTS is a mental health facility that provides treatment to civilly committed detainees who have been declared sexually violent predators under Missouri law.  [Id. at ¶¶ 8–9].  SORTS is accredited under Joint Commission on Accreditation of Healthcare Organization standards.  [Id. at ¶ 9]. Included within SORTS' accreditation is a review of its staffing levels, treatment standards, and security and emergency preparedness.  [Id.]

In terms of its facility, SORTS has three buildings: the Blair Building, the Hoctor Building, and the Group Home.  [Id. at ¶ 12].  The Blair Building and the Hoctor Building are within SORTS' secure perimeter, while the Group Home is outside of the secure perimeter.  [Id.]  The Blair Building contains two wards (Blair 2 and Blair 3), and the Hoctor Building contains eight wards (Hoctor wards 1–6, Hoctor Center, and Hoctor Annex).  [Id.]

The wards at SORTS have different room occupancies.  Blair 2 and Blair 3 have double-occupancy rooms and a single-occupancy room.  [Id.]  Hoctor wards 1–6 have triple- and quadruple-occupancy rooms.  [Id.]  Hoctor Center has double-occupancy rooms, single-occupancy rooms, and a triple-occupancy room.  [Id.] Hoctor Annex has only double-occupancy rooms.  [Id.]  And the Group Home has both double- and single-occupancy rooms.  [Id.]

The wards at SORTS are also used for different purposes.  The Blair wards are used for individuals in an advanced phase of treatment who are not struggling with aggressive behaviors.  [Id. at ¶ 14].  Hoctor Center is used for individuals that require additional assistance due to age or medical conditions.  [Id. at ¶ 15].  Hoctor Annex is used for individuals in the final phase of treatment before receiving conditional release.  [Id. at ¶ 16].  And the Group Home is used for individuals who have been granted conditional release.  [Id.]

Since moving to SORTS, Wright has not consented to treatment and, as a result, has remained in the first phase of treatment.  [Id. at ¶ 19].  Wright has also continued to exhibit aggressive behaviors.  [Id.]  Wright does not, however, require additional assistance in managing a medical condition or his daily functioning.  [Id.]  Nor has Wright been granted conditional release.  [Id. at ¶ 20].  In light of these factors, Wright has been appropriately placed in Hoctor wards 1–6.  [Id. at ¶ 19].

Shortly after arriving at SORTS, Wright began requesting accommodations related to his cold sensitivity.  In September 2018, Wright requested additional blankets.  [ECF No., Pl.'s SUMF, ¶ 16].  The following month, Wright requested a face-to-face meeting with SORTS' ADA coordinator to discuss additional clothes.  [Id. at ¶ 19].  Thereafter, Wright requested a single-occupancy room where he could control the temperature.  [Id. at ¶¶ 17–18].  Wright then requested a face-to-face meeting with SORTS' ADA coordinator to discuss a single-occupancy room.  [Id.

at ¶ 20].  Due to issues with hot water in his building, Wright also requested a transfer to the Group Home for access to hot water.  [Id. at ¶¶ 21–22].

In response to his requests, SORTS provided Wright additional blankets, a coat, gloves, and a hat.  [ECF No. 65, Def.'s SUMF, ¶¶ 33–36].  SORTS also began allowing Wright and other detainees to go to another building for hot water when issues arose in Wright's building.  [Id. at ¶¶ 37–38].  In addition, Crystal Mace, SORTS' Patient Rights Coordinator, met with Wright and told him that decisions regarding accommodations had to be made by the facility or a doctor.  [Id. at ¶¶ 43–45].  A nurse practitioner at SORTS also spoke with Wright and informed him that his request for a single-occupancy room was not medically necessary.  [Id. at ¶ 47].

Unsatisfied with SORTS' efforts to accommodate him, Wright filed this lawsuit in November 2018.  In his lawsuit, Wright alleges that the MDMH—through SORTS—violated Title II of the ADA by failing to engage in an interactive process of seeking reasonable accommodations for his disability and failing to provide reasonable accommodations.  [ECF No. 1, Compl.].[2]  Wright's alleged disability relates to his cold sensitivity, and his complaint relates to his requests for a single-occupancy room and a transfer to the Group Home for hot water.  [Id. at pp. 3–6].

---

[2] Wright also contends that SORTS violated provisions of the Rehabilitation Act ("RA").  [ECF No. 1, Compl., ¶ 24].  "The ADA and the RA are similar in substance and, with the exception of the RA's federal funding requirement, cases interpreting either are applicable and interchangeable."  Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999) (internal quotation marks omitted).  Accordingly, I will analyze Wright's claims under the ADA standard.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in a light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Garrison v. Dolgencorp, LLC, 939 F.3d 937, 941 (8th Cir. 2019). A moving party bears the initial burden of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At that point, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, a plaintiff must designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## DISCUSSION

To establish a violation of Title II of the ADA, a plaintiff must demonstrate: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [public entity's] services, programs, or activities, or was otherwise subjected to discrimination by the [public entity]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of

6

his disability." Baribeau v. Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010) (citing Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998)).

Wright alleges that SORTS violated Title II by failing to engage in an interactive process of seeking reasonable accommodations for his disability and failing to provide reasonable accommodations. [ECF No. 1, Compl.]. Failure to provide reasonable accommodations for a qualified individual's known disability is a form of discrimination under both the ADA and RA. Withers v. Johnson, 763 F.3d 998, 1003 (8th Cir. 2014). In addition, to determine whether an accommodation for an individual is necessary, and if so, what the accommodation might be, a public entity and the individual must engage in an "interactive process." See Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 902 (8th Cir. 2009).

## I. **Disability**

The threshold question is whether Wright has produced sufficient evidence showing that he has a disability. Under the ADA, an individual has a "disability" if he has: "(A) a physical or mental impairment that substantially limits one or more major life activities …; (B) a record of such an impairment; or (C) [been] regarded as having such an impairment." 42 U.S.C. § 12102(1). Because "regarded as" plaintiffs are not entitled to reasonable accommodations, Duello v. Buchanan Bd. Sup'rs, 628 F.3d 968, 972 (8th Cir. 2010), a plaintiff asserting a failure-to-accommodate claim must establish that he has a "physical or mental impairment that

7

substantially limits one or more life activities" or a "record of such an impairment." Hustvet v. Allina Health Sys., 910 F.3d 399, 410 (8th Cir. 2018).

Wright contends that he has a disability because his major life activity of "keeping warm" is substantially limited by his CML, pernicious anemia, and the side-effects of his chemotherapy medication. [ECF No. 1, Compl., ¶ 14]. The MDMH acknowledges that cancer generally qualifies as a disability but argues that Wright is not disabled because the only activity affected by his conditions is his self-reported cold sensitivity. [ECF No. 63, Def.'s Mem. in Supp. of Mot. for Summ. J., p. 14]. In the MDMH's view, no major life activities under the ADA are implicated and "merely keeping warm" does not qualify as an ADA disability. [Id. at 14–15].

Although this is a close question, I find summary judgment is not appropriate on the grounds that Wright lacks a disability. Cancer and anemia are impairments. See Oehmke v. Medtronic, Inc., 844 F.3d 748, 756 (8th Cir. 2016); Martin v. Teleperformance Inc., 839 Fed. Appx. 443, 445 (11th Cir. 2021). The body's ability to keep warm is a major life activity. See 42 U.S.C. § 12102(2)(B) (stating "major life activities" include "the operation of a major bodily function"). And courts must determine whether a limitation is substantial "in light of [Congress's] broad command to interpret disability broadly." Oehmke, 844 F.3d at 756.

It is undisputed that Wright has been diagnosed with CML and pernicious anemia. See [ECF No. 82, Pl.'s SUMF, ¶¶ 4–5; ECF No. 87, Def.'s Resp. to Pl.'s

SUMF, ¶¶ 4–5].  While the MDMH states that Wright's CML is in remission and that his pernicious anemia is treated effectively, these facts are not dispositive of whether Wright has a disability.  See 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); 42 U.S.C. § 12102(4)(E) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as … medication[.]").

Furthermore, there is a dispute of fact as to whether Wright's ability to keep warm is substantially limited by his impairments.  See [ECF No. 82, Pl.'s SUMF, ¶¶ 12 & 14; ECF No. 87, Def.'s Resp. to Pl.'s SUMF, ¶¶ 12 & 14].  Because the only evidence connecting Wright's impairments to his inability to keep warm is his testimony and his history of receiving accommodations while incarcerated, it is unclear at this point whether Wright's inability to keep warm is in fact caused by his impairments.  Wright may be unable to prove that his impairments substantially limit his ability to keep warm.  But, viewing the evidence at this stage in the light most favorable to Wright, I do not find that he is without a disability as a matter of law.

## II.   Failure-to-Accommodate Claim

The next question is whether Wright has produced sufficient evidence to support his failure-to-accommodate claim.  As noted above, in determining whether an accommodation for an individual's disability is necessary, a public entity and the

individual must engage in an "interactive process."  See Peyton, 561 F.3d at 902. And a public entity's failure to provide reasonable accommodations is a form of discrimination under the ADA and RA.  See Withers, 763 F.3d at 1003.

Wright asserts that SORTS failed to engage in the interactive process and failed to provide reasonable accommodations.  The MDMH argues that Wright's claim fails because, among other things, the undisputed evidence shows that (1) he has not specified a benefit to which he has been denied meaningful access based on his alleged disability; (2) SORTS engaged in the interactive process; and (3) his alleged disability has been reasonably accommodated.  [ECF No. 63, Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 15–20].[3]  I will address these issues in turn.

### A. Denial of Benefits

"To show a violation of Title II, [a plaintiff] must specify a benefit to which he was denied meaningful access based on his disability."  Mason v. Correctional Med. Servs., Inc., 559 F.3d 880, 888 (8th Cir. 2009).  The MDMH maintains that Wright's claim fails because he has not identified a specific benefit to which he has been denied access based on his alleged disability.  [ECF No. 63, Def.'s Mem. in Supp. of Mot. for Summ. J., p. 15].  Wright responds that he has been denied a single-

---

[3] The MDMH also argues that Wright's claim fails because (1) he has failed to make a case under the applicable standard for technical and professional judgments; (2) he is impermissibly seeking to challenge medical decisions; and (3) his requested accommodations would constitute an undue hardship.  [ECF No. 63, Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 15–17 & 20–23].  The MDMH argues, in the alternative, that summary judgment should be granted on all claims for money damages because Wright has failed to show deliberate indifference.  [Id. at 23].

occupancy room where he can control the temperature as well as access to hot water. [ECF No. 81, Pl.'s Mem. in Opp. to Mot. for Summ. J., p. 16].  In reply, the MDMH argues that summary judgment is nonetheless appropriate because the services identified by Wright are special accommodations, not services available to everyone at SORTS.  [ECF No. 86, Def.'s Reply Mem. in Supp. of Mot. for Summ. J., p. 8].

As for Wright's alleged denial of access to hot water, I find such a denial does not support his claim because there is no evidence suggesting he was denied access based on his disability.  The evidence shows that the issues with hot water affected all detainees in Wright's building, not merely Wright.  See, e.g., [ECF No. 65, Ex. A, Wright Dep., 62:11–17].  The evidence also shows that the issues with hot water were caused by general problems with SORTS' water system.  [ECF No. 65, Def.'s SUMF, ¶ 37; ECF No. 83, Pl.'s Statement of Genuine Issues of Material Facts in Dispute, ¶ 37].  These facts demonstrate that Wright has not been denied access to hot water based on (because of) his alleged disability.  Therefore, Wright's alleged denial of hot water cannot form a basis for finding a Title II violation.  See Windeknecht v. Missouri Dep't of Mental Health, No. 4:20-CV-293 JAR, 2020 WL 4732050, at *8 (E.D. Mo. Aug. 14, 2020); Johnson v. Precythe, No. 4:19-CV-2617-SPM, 2020 WL 3103967, at *3 (E.D. Mo. June 11, 2020).

Whether Wright's denial of a single-occupancy room can support a finding of a Title II violation is a closer question.  The MDMH correctly notes that, to show a

Title II violation, the benefit specified must be generally available to non-disabled individuals.  See Hestdalen v. Corizon, LLC, No. 2:18-CV-00039-JAR, 2021 WL 463514, at *15 (E.D. Mo. Feb. 9, 2021); Cade v. Williams, No. 5:14CV00046 JLH/JTR, 2014 WL 5529743, at *3 (E.D. Ark. Oct. 31, 2014).  If Wright were merely asserting that he is entitled to the benefit of a single-occupancy room, his claim would fail because single-occupancy rooms are not available to all detainees at SORTS.  However, given Wright's pro se status and in the interests of justice, I construe Wright's claim as asserting that he has been denied a habitable room. Because there would be a Title II violation if Wright were denied such a room based on his disability, I find summary judgment is not appropriate on the grounds that Wright has failed to specify a benefit to which he has been denied meaningful access.

## B. The Interactive Process

Turning to whether SORTS engaged in the interactive process, I note first that there is no "per se liability under the ADA" for failing to engage in the interactive process.  Minnihan v. Mediacom Commc'ns. Corp., 779 F.3d 803, 813 (8th Cir. 2015).  However, at the summary judgment stage, failure to engage in the interactive process is "prima facie evidence that the [defendant] may be acting in bad faith."  Id. And "summary judgment is typically precluded when there is a genuine dispute as to whether the [defendant] acted in good faith and engaged in the interactive process."  Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 953 (8th Cir. 1999).

12

To establish that a defendant failed to engage in the interactive process, a plaintiff must demonstrate that: (1) the defendant knew of the plaintiff's disability; (2) the plaintiff requested an accommodation; (3) the defendant did not make a good faith effort to assist the plaintiff in seeking an accommodation; and (4) the plaintiff could have been reasonably accommodated but for the defendant's lack of good faith.  Minnihan, 779 F.3d at 813; see also Garrison, 939 F.3d at 941 (referring to the interactive process as a "flexible and informal" process).

Wright's claim that SORTS did not engage in the interactive process fails because the evidence shows that SORTS made a good faith effort to assist him in seeking reasonable accommodations.  In September 2018, shortly after arriving at SORTS, Wright requested additional blankets as an accommodation.  [ECF NO. 65, Ex. A, Wright Dep., 30:11–12; ECF No. 82, Pl.'s SUMF, ¶ 16].  SORTS provided Wright additional blankets, and he now has access to as many blankets as he wants. [ECF No. 65, Ex. A, Wright Dep., 30:13–20].  According to Wright, access to additional blankets is not a problem.  [Id. at 30:18–20].

In October 2018, Wright submitted a SORTS Team Request in which he requested a face-to-face meeting with SORTS' ADA coordinator to discuss receiving a jacket and gloves.  [ECF No. 15, Ex. 14, October 11, 2018, Team Request].  SORTS responded and instructed Wright to submit a property request for a jacket.  [Id.]  Although SORTS was initially unable to provide a jacket to Wright

because it did not have clothes available, Wright was eventually provided a coat, gloves, and a hat. [ECF No. 65, Ex. A, Wright Dep., 30:21–32:15].

In November 2018, Wright submitted another Team Request, reiterating his desire to see SORTS' ADA coordinator. [ECF No. 15, Ex. 16, November 7, 2018, Team Request]. SORTS responded and informed Wright that Crystal Mace, SORTS' Patient Rights Coordinator, would meet with him soon. [Id.] SORTS also instructed Wright to speak with medical staff about his requests for accommodations because medical staff needed to advise on accommodations. [Id.] While Wright disputes whether Mace is SORTS' ADA coordinator, he was told that she was assigned as an ADA person, and he met with her to discuss his accommodation needs. [ECF No. 65, Ex. A, Wright Dep., 38:2–17].

Wright also filed a grievance in November 2018 in which he stated he needed a single-occupancy room. [ECF No. 15, Ex. 17, November 12, 2018, Grievance]. SORTS responded and informed Wright that the facility did not have the ability to provide him such a room. [Id.] SORTS also instructed Wright to speak with staff about working with his roommates regarding the temperature in his room and, as noted above, advised him to speak with medical staff. [Id.]; see also [ECF No. 15, Ex. 16, November 7, 2018, Team Request]. When Wright spoke with Mace, she also instructed him to meet with medical staff and request a determination regarding accommodations. [ECF No. 65, Ex. A, Wright Dep., 41:9–13]. Wright eventually

14

spoke with a nurse practitioner at SORTS who informed him that his request for a single-occupancy room was not medically necessary.  [Id. at 41:14–19].

In his grievance, Wright also stated that there was no hot water in his building. [ECF No. 15, Ex. 17, November 12, 2018, Grievance].  SORTS responded and informed Wright that maintenance had advised that the hot water was back within normal limits.  [Id.]  However, because there were reoccurring issues in Wright's building, Wright later requested a transfer to the Group Home.  [ECF No. 82, Pl.'s SUMF, ¶ 22].  In light of the reoccurring nature of the problem, SORTS began allowing Wright and other detainees to go to another building for hot water when issues arose in Wright's building.  [ECF No. 65, Ex. A, Wright Dep., 11:23–12:17].

These facts show that SORTS engaged in the interactive process with Wright. SORTS provided many of Wright's requested accommodations.  SORTS staff, including Mace, met with Wright after he requested a face-to-face meeting to discuss accommodations.   SORTS  also  attempted  to  assist  Wright  in  seeking accommodations by instructing him to meet with medical staff.  Furthermore, SORTS was responsive to issues regarding hot water and active in seeking to remedy the problem through maintenance and allowing detainees to go to another building.

Viewing the evidence in the light most favorable to Wright, I find that SORTS made a good faith effort to assist him in seeking reasonable accommodations.

15

Therefore, summary judgment is not precluded in this case on the grounds that there is a genuine dispute as to whether SORTS engaged in the interactive process.

## C. Reasonable Accommodations

Having found that SORTS engaged in the interactive process, I also find that summary judgment is appropriate in this case because, to the extent Wright has a disability, he has been reasonably accommodated. As an initial matter, I note that, in his opposition to the MDMH's motion for summary judgment, Wright refers to "evidence of pretextual reasons to conceal [the] real discriminatory reason to deny [him] benefits." [ECF No. 81, Pl.'s Mem. in Opp. to Mot. for Summ. J., p. 23]. Wright then explains the McDonnell-Douglas burden-shifting analysis, which is used in certain discrimination cases and involves evidence of pretext. [Id. at 23–24]. Wright's arguments regarding pretext are misplaced here, however, because this is a failure-to-accommodate case, not disparate treatment case.

"In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals." Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004). Because the "key element is discriminatory intent," the McDonnell-Douglas burden-shifting analysis is applied if there is no direct evidence of discrimination. Id. A failure-to-accommodate claim, on the other hand, is not evaluated using the McDonnell-Douglas analysis because such a claim does not turn on a defendant's intent or motive. Id. Instead, "the

16

'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." Id. at 767.

The MDMH contends that, assuming Wright has a disability, SORTS fulfilled its duty to reasonably accommodate his limitations. [ECF No. 63, Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 17–19]. In support of this contention, the MDMH points to the fact that Wright has been provided as many blankets as he wants, as well as a coat, gloves, and a hat. [Id. at 19]. The MDMH also notes that medical recommendations for additional blankets and clothing are followed and that medical staff has advised that there is no medical reason to provide Wright a single-occupancy room. [Id. at 18–19]. Regarding hot water, the MDMH notes that Wright and others in his building are allowed to go to another building for hot water when there are issues in Wright's building. [Id. at 19].

I agree with the MDMH and find that Wright has been reasonably accommodated. Though the ADA requires public entities to accommodate disabled individuals, "'a disabled individual is not entitled to an accommodation of his choice.'" Minnihan, 779 F.3d at 813 (quoting Rehrs v. Iams Co., 486 F.3d 353, 359 (8th Cir. 2007)). Indeed, a disabled individual is entitled only to a reasonable accommodation, not an accommodation that is ideal from his perspective. Huber v. Wal-Mart Stores, Inc., 486 F.3d 480, 484 (8th Cir. 2007); see also Brunckhorst v. Oak Park Heights, 914 F.3d 1777, 1183 (8th Cir. 2019). The evidence here shows

17

that Wright has received reasonable accommodations and, as a result, has not been denied meaningful access to any benefits.

With respect to Wright's alleged inability to keep warm in his room, SORTS has provided Wright as many blankets as he wants, as well as a coat, gloves, and a hat. [ECF No. 65, Def.'s SUMF, ¶¶ 33–36]. These accommodations are reasonable because they are consistent not only with recommendations from SORTS' medical staff but also with Wright's medical record and history of receiving accommodations. See [Id. at ¶¶ 31–32].[4]   In addition, providing these accommodations rather than a single-occupancy room is reasonable because SORTS' medical staff is of the opinion that a single-occupancy room is not medically necessary. See [Id. at ¶¶ 47, 56]. Although Wright may prefer a single-occupancy room, these facts demonstrate that he has been reasonably accommodated. See Brunckhorst, 914 F.3d at 1182–83 (noting defendant's proposed accommodation was consistent with the doctor's decision and that there was no medical reason for plaintiff's requested accommodation); Vinh v. Express Scripts Servs. Co., No. 18-cv-01679 (SRN/ECW), 2020 WL 1923745, at *17 (D. Minn. Apr. 21, 2020) (stating defendant was not obligated to provide plaintiff's

---

[4] While Wright received additional accommodations during his incarceration, the additional accommodations were related to matters that are not material to this case.  For example, Wright's occasional isolation in a single-occupancy cell was related to his increased risk of infection.  [ECF No. 82, Pl.'s SUMF, ¶ 9].  Similarly, Wright's orders for "no work" and "no recreation" were related to his chronic back pain.  [ECF No. 65, Ex. A, Wright Dep., 33:8–14].  In this case, Wright is not seeking accommodations for an increased risk of infection or for his chronic back pain.

requested accommodation "absent medical documentation indicating it was appropriate or necessary for [plaintiff's] disability").

As for issues with access to hot water, as discussed above, Wright's alleged denial of access to hot water cannot form a basis for finding a Title II violation because there is no evidence suggesting Wright was denied access to hot water because of his disability.  In any event, the evidence shows that SORTS reasonably accommodated Wright by monitoring the water levels in his building, working to fix the problems causing a lack of hot water, and allowing Wright and other detainees to go to another building when problems continued occurring.  See [ECF No. 15, Ex. 16, November 7, 2018, Team Request; ECF No. 15, Ex. 17, November 12, 2018, Grievance; ECF No. 65, Def.'s SUMF, ¶¶ 37–39].

A finding that summary judgment is appropriate in this case is further supported by Wright's failure to make a sufficient showing that his requested accommodations are reasonable.  To succeed on a failure-to-accommodate claim, "[a] reasonable accommodation that imposes no undue burden on the [defendant]" must be shown.  Peebles, 354 F.3d at 767.  At the summary judgment stage, this requires a plaintiff to show that "the requested accommodation is 'reasonable on its face, *i.e.,* ordinarily or in the run of cases.'"  Id. at 768 (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002)).  It is only after a plaintiff meets this burden

that a defendant is left to show special circumstances demonstrating "'undue hardship in the particular circumstances.'"  Id. (quoting Barnett, 535 U.S. at 402).

Wright has identified two detainees who he contends have been placed in a single-occupancy room.  [ECF No. 82, Pl.'s SUMF, ¶ 45].  Wright has not, however, produced evidence showing that either of those detainees were placed in a single-occupancy room indefinitely or for an extended period.  Nor has Wright produced evidence showing that he is similarly situated to those detainees in terms of disability, limitations, treatment phase, behavioral issues, or suitability for certain buildings, which is significant given the treatment goals and security concerns at SORTS.  Without any such evidence, Wright has failed to show that his request for a single-occupancy room is reasonable in the run of cases.  As for Wright's requested transfer to the Group Home for hot water, such a request is clearly not reasonable because Wright has not been granted conditional release and the Group Home is outside of SORTS' secure perimeter.  See [ECF No. 65, Def.'s SUMF, ¶¶ 16 & 20].

In sum, viewed in the light most favorable to Wright, the evidence shows that he has been reasonably accommodated and that he has failed to demonstrate that his requested accommodations are reasonable in the run of cases.  As a result, the MDMH is entitled to summary judgment, and any further discussion regarding the MDMH's additional arguments would be superfluous.

## CONCLUSION

For the foregoing reasons, the MDMH's motion will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Missouri Department of

Mental Health's motion for summary judgment [62] is **GRANTED**.

A separate judgment is issued this same date.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October 2021.

21